## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Bankr. Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| ALAMEDA RESEARCH LTD., WEST REALM SHIRES, INC., and WEST REALM SHIRES SERVICES, INC., | |
| Plaintiffs-Appellees, | Adv. Pro. No. 23-50379 |
| -against- | Appeal from the United States Bankruptcy Court for the District of Delaware |
| WILLIAM HOCKEY LIVING TRUST and 9YARDS CAPITAL INVESTMENTS II LP, | 1:24-mc-00562-CFC |
| Defendants-Appellants. | |

---

[1]  The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063 respectively. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

| | |
|---|---|
| ALAMEDA RESEARCH LTD., WEST REALM SHIRES, INC., and WEST REALM SHIRES SERVICES, INC., <br><br>                     Plaintiffs-Appellees, <br>    -against- <br><br>MICHAEL GILES *et al.*, <br><br>                    Defendants-Appellants. | Adv. Pro. No. 23-50380 <br><br>Appeal from the United States Bankruptcy Court for the District of Delaware <br><br>1:24-mc-00563-CFC <br>1:24-mc-00568-CFC <br>1:24-mc-00577-CFC |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS FOR LEAVE TO APPEAL

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ...............................................................................................3

LEGAL STANDARD .........................................................................................6

ARGUMENT ...................................................................................................7

    I.    The Motions Implicate No Controlling Question of Law ....................7

    II.   There Is No Substantial Ground for Difference of Opinion as to the Bankruptcy Court's Section 546(e) Ruling ........................................11

    III.  Defendants' Requested Appeal Would Not Materially Advance the Litigation ................................................................................14

    IV.  There Are No Exceptional Circumstances To Justify Interlocutory Review ....................................................................................16

CONCLUSION ...............................................................................................17

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*In re AE Liquidation, Inc.*,
   451 B.R. 343 (D. Del. 2011)..................................................................6

*In re Boston Generating*,
   12-ap-01879 (Bankr. S.D.N.Y. Apr. 3, 2019) ....................................14

*In re Del. & Hudson Ry. Co.*,
   96 B.R. 469 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989)................6, 16

*In re Dwek*,
   2011 WL 487582 (D.N.J. Feb. 4, 2011) ...............................................9

*In re Enron Corp.*,
   2008 WL 281972 (S.D.N.Y. Jan. 25, 2008) ....................................9, 16

*In re Enron Creditors Recovery Corp.*,
   2009 WL 3349471 (S.D.N.Y. Oct. 16, 2009)...................................8, 9

*In re Essar Steel Minn. LLC*,
   607 B.R. 409 (D. Del. 2019).........................................................6, 11

*First Am. Bank of N.Y.* v. *Century Glove, Inc.*,
   64 B.R. 958 (D. Del. 1986).....................................................................3

*In re Frascella Enters.*,
   388 B.R. 619 (Bankr. E.D. Pa. 2008) ...................................................8

*German v. Fed. Home Loan Mortg. Corp.*,
   896 F.Supp. 1385 (S.D.N.Y. 1995) ......................................................7

*Jackson Hewitt, Inc.* v. *DJSG Utah Tax Serv., LLC*,
   2011 WL 601585 (D.N.J. Feb. 17, 2011) .............................................7

*Katz* v. *Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974) ..........................................................6, 7, 9

ii

*Lang* v. *Morant*,
 867 A.2d 182 (Del. 2005) ...................................................................12

*In re Live Well Fin., Inc.*,
 2023 WL 3995900 (Bankr. D. Del. June 13, 2023)...........................10

*Lopez* v. *Overtime 1st Ave. Corp.*,
 252 F. Supp. 3d 268 (S.D.N.Y. 2017) ..................................................7

*In re Maxus Energy Corp.*,
 2019 WL 4343722 (D. Del. Sept. 12, 2019)........................................8

*Mohawk Indus.* v. *Carpenter*,
 558 U.S. 100 (2009).............................................................................6

*Nickert* v. *Puget Sound Tug & Barge Co.*,
 480 F.2d 1039 (9th Cir. 1973) ...........................................................10

*In re Nine W. LBO Sec. Litig.*,
 87 F.4th 130 (2d Cir. 2023) .........................................................10, 13

*In re Paragon Offshore PLC*,
 2020 WL 1815550 (D. Del. Apr. 9, 2020) .........................................16

*In re THG Holdings LLC*,
 2020 WL 1493622 (D. Del. Mar. 27, 2020) .........................................9

*In re Tribune*,
 946 F.3d 66 (2d Cir. 2019) ................................................................ 12

**Statutes**

11 U.S.C. § 101(22) ....................................................................................2, 5

11 U.S.C. § 546(e) ...............................................................................*passim*

28 U.S.C. § 158............................................................................................6

28 U.S.C. § 1292(b) .................................................................................6, 11

**Other Authorities**

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and
 Procedure* (3d ed. 2005) ...................................................................15

Plaintiffs Alameda Research Ltd., West Realm Shires, Inc., and West Realm Shires Services, Inc. (together, the "Plaintiffs") respectfully submit this opposition to *Shareholder Defendants' Motion for Leave to Appeal*, ECF No. 1 ("the Motion"),[1] joined by other Defendants (the "Joinder Motions") in the above-captioned adversary proceedings (together, the "Motions").[2]  In support of this opposition, Plaintiffs respectfully state as follows:

## PRELIMINARY STATEMENT

Defendants' Motions seek to sidestep the bedrock principle that requires entry of a final judgment prior to appellate review, in an attempt to obtain this Court's ruling, at a premature stage, on an issue of fact that the Bankruptcy Court below did not even reach:  whether Defendants' asserted affirmative defense under 11 U.S.C. § 546(e) ("Section 546(e)") applies at the pleading stage to bar certain of Plaintiffs' constructive fraudulent transfer claims.  To qualify for this "safe-harbor," Section 546(e) requires, in relevant part, that the payments sought to be avoided be (i) qualifying payments (ii) made by, or to (or for the benefit of) a "financial institution," which is defined to include a "customer" of that institution when the

---

[1]    1:24-mc-00563 (D. Del. Nov. 7, 2023), ECF No. 1.

[2]    1:24-mc-00562 (D. Del. Nov. 7, 2023), ECF No. 1; 1:24-mc-00568 (D. Del. Nov. 8, 2024), ECF No. 1; 1:24-mc-00577 (D. Del. Nov. 14, 2024), ECF No. 1.

institution is "acting as agent or custodian" for that customer. *Id*. §§ 546(e), 101(22)(A).  The latter requirement is the subject of disagreement here.

Defendants urged the Bankruptcy Court in their motions to dismiss, and now again urge this Court, to determine that Western Alliance Bank, the institution designated to effectuate certain payments in connection with Plaintiffs' acquisition of Embed Financial Technologies Inc. ("Embed"), was "acting as agent or custodian" for the parties to the transaction, which in turn should be deemed "financial institution[s]" for purposes of Section 546(e).  The Bankruptcy Court denied the motions to dismiss based on Section 546(e), deferring ruling at the pleading stage on this "fact-intensive determination[]" in light of "the limited record before [it]."  Mem. Op. at 23, *Alameda Rsch. Ltd*. v. *Giles*, No. 23-50380 (Bankr. D. Del. Oct. 23, 2024), Adv. D.I. 288 (the "Opinion").[3]  But instead of continuing to develop that record through discovery, Defendants now seek a second bite at the apple in this Court.

Defendants plainly have not established the prerequisites for interlocutory appeal.  *First*, there is no controlling question of law.  Defendants' attempt to frame the Bankruptcy Court's ruling below as presenting a pure legal issue

---

[3]    For ease of reference, all further Adv. D.I. cites shall refer to the underlying litigation in *Alameda Rsch. Ltd.* v. *Giles*, No. 23-50380 (Bankr. D. Del. 2023) unless otherwise specified.  All further ECF cites shall refer to the instant appeals filed in this Court.

is misleading at best, and ignores the fact-intensive inquiry required by Section 546(e). *Second*, there is no substantial ground for difference of opinion as to the Bankruptcy Court's decision. In fact, it is well established that courts have broad discretion to defer ruling on certain legal issues until after they have a full factual record, and requests for interlocutory appeal are regularly denied on this basis. *Third*, granting interlocutory appeal will not materially advance the litigation, including because Plaintiffs are imminently filing in the Bankruptcy Court motions to amend their complaints, which, if granted, will result in new operative complaints that will (a) revive Plaintiffs' actual fraudulent transfer claims, which are not subject to Section 546(e), and (b) supersede the initial complaints that were the subject of the motions to dismiss and the Bankruptcy Court's ruling on those motions, and thereby moot Defendants' instant Motions. *Finally*, Defendants have presented no "exceptional circumstances" that would justify interlocutory appeal. *First Am. Bank of N.Y.* v. *Century Glove, Inc.*, 64 B.R. 958, 961 (D. Del. 1986) ("[I]n the bankruptcy context . . . only in 'exceptional' circumstances will a court hear an appeal from an interlocutory order."). The Court should deny Defendants' Motions.

## BACKGROUND

The litigation in the Bankruptcy Court below arises out of the multi-billion dollar fraudulent scheme perpetrated by Samuel Bankman-Fried,

Caroline Ellison, Nishad Singh, and Gary "Zixiao" Wang, who ran the FTX Group[4] (collectively, the "FTX Insiders").  The FTX Insiders saw expansion into regulated financial markets—and the façade of legitimacy, growth, and profitability it would create for the FTX Group—as an essential part of Bankman-Fried's ability to sustain and prolong the fraud.  In furtherance of that goal, the FTX Insiders caused Plaintiff West Realm Shires, Inc. ("WRS") to acquire Embed, a nascent stock clearing firm and broker-dealer with crippling technology issues and minimal customers and revenue, for a massively inflated price, without conducting any meaningful due diligence.  After less than one month of negotiations, WRS and Embed signed a term sheet that provided that WRS would pay $220 million to acquire Defendants' equity interests in Embed and $75 million in retention bonus payments to Embed employees, including $55 million to Embed founder Michael Giles simply for remaining employed at his own company for five months between the signing of the term sheet and the closing of the transaction.  Within weeks of closing the acquisition, the FTX Group filed for bankruptcy, and Plaintiffs subsequently

---

[4]    The FTX Group is comprised of four silos.  These silos include:  (a) a group composed of Plaintiffs and Debtors WRS, West Realm Shires Services, Inc., and their Debtor and non-Debtor subsidiaries; (b) a group composed of Plaintiff and Debtor Alameda Research Ltd., Debtor Alameda Research LLC, and their Debtor subsidiaries; (c) a group composed of Debtor Clifton Bay Investments LLC, Debtor Clifton Bay Investments Ltd., Debtor Island Bay Ventures Inc., and Debtor FTX Ventures Ltd.; and (d) a group composed of Debtor FTX Trading Ltd. and its Debtor and non-Debtor subsidiaries.

commenced litigation against Giles, as well as a group of former Embed equity holders and employees, to avoid and recover those payments.

In their motions to dismiss, Defendants argued that the Bankruptcy Court should dismiss Plaintiffs' constructive fraudulent transfer claims under federal and state law, based on an affirmative defense under Section 546(e). Section 546(e) provides, in relevant part, that a debtor cannot avoid a transfer that is (i) a "settlement payment . . . made by or to (or for the benefit of) a financial institution," or (ii) "made by or to (or for the benefit of) a . . . financial institution . . . in connection with a securities contract." The Bankruptcy Code defines "financial institution" to include a "customer" of that institution, when the institution is "acting as agent or custodian" for that customer "in connection with a "securities contract." 11 U.S.C. § 101(22)(A). Defendants argued that Western Alliance Bank acted as an "agent" in connection with the acquisition of Embed equity interests in a manner sufficient to invoke the "safe harbor" of Section 546(e). The Bankruptcy Court denied Defendants' motions to dismiss on that "customer exception" ground, holding that it was unable to "determine whether an agency relationship existed" between Western Alliance Bank and WRS or Defendants "based on the limited record before [it]." Opinion at 20-24.

## LEGAL STANDARD

Interlocutory appeals are heavily disfavored and rarely appropriate, except where "exceptional circumstances" exist. *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). Piecemeal litigation "undermines efficient judicial administration and encroaches upon the prerogatives of" courts of first impression "who play a special role in managing ongoing litigation." *Mohawk Indus.* v. *Carpenter*, 558 U.S. 100, 106 (2009) (internal quotations omitted).

To justify interlocutory appeal from a bankruptcy court order, the issue being appealed must "(1) involve[] a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation." *In re Essar Steel Minn. LLC*, 607 B.R. 409, 414 (D. Del. 2019) (citing 28 U.S.C. § 1292(b);[5] *Katz* v. *Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974)). Leave for interlocutory appeal should also be denied based on additional considerations, such as "the state of the appellate docket" or the court's "desire to

---

[5]    When deciding motions for leave to appeal interlocutory orders of bankruptcy courts pursuant to 28 U.S.C. § 158(a)(3), "district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).

have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754; *Lopez* v. *Overtime 1st Ave. Corp.*, 252 F. Supp. 3d 268, 273 (S.D.N.Y. 2017) (noting that courts have "unfettered discretion" to deny leave for interlocutory appeal "for any reason" (internal quotations omitted)).

In short, interlocutory appeals are not meant "to provide early review of difficult rulings in hard cases." *Jackson Hewitt, Inc.* v. *DJSG Utah Tax Serv., LLC*, 2011 WL 601585, at *2 (D.N.J. Feb. 17, 2011) (quoting *German* v. *Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995)).

## ARGUMENT

### I. The Motions Implicate No Controlling Question of Law.

Defendants distort the Bankruptcy Court's decision by mischaracterizing it as creating a "pure legal conflict" with non-binding Second Circuit case law. *See* Motion at 7. But the Bankruptcy Court's Opinion could not be any clearer. The Opinion did not rule on whether Section 546(e) is triggered when the relevant transfer is made by or to an entity for which a financial institution is acting as an agent. Rather, the Bankruptcy Court declined to take up the question of whether and to what extent the safe harbor applies at the motion to dismiss stage, noting that whether "an agency relationship existed" could not yet be determined based "on the limited record" available. Opinion at 23.

Despite this limited ruling, Defendants emphasize the Bankruptcy Court's observation that it was "not persuaded" by the Second Circuit's broad interpretation of 11 U.S.C. § 101(22)(A), arguing it shows that the requested interlocutory appeal involves a controlling question of law, but Defendants conveniently omit the remainder of the quoted sentence, which states that, in any event, "*it makes no difference to the outcome of the Motions*" to dismiss in light of the "limited record" at this early stage of litigation. Opinion at 23 (emphasis added). The Opinion thus leaves no room for doubt that "the purported controlling questions of law are really questions of fact that can only be resolved by the Bankruptcy Court after a proper evidentiary record is laid." *In re Maxus Energy Corp.*, 2019 WL 4343722, at *8 (D. Del. Sept. 12, 2019); *In re Frascella Enters.*, 388 B.R. 619, 623-24 (Bankr. E.D. Pa. 2008) ("It is without question that issues of fact are not an appropriate basis for an interlocutory appeal.").

Defendants argue that these facts are similar to *In re Enron Creditors Recovery Corp.*, where interlocutory appeal was allowed on a Section 546(e) issue. Motion at 9-10 (citing *In re Enron Creditors Recovery Corp.*, 2009 WL 3349471 (S.D.N.Y. Oct. 16, 2009)). The cited *Enron* case, however, was in an entirely different posture; that decision involved an appeal from the bankruptcy court's denial of summary judgment, at which point there was a significantly more developed

factual record than here.[6]  In fact, that same adversary proceeding *did* involve a prior

motion for leave to appeal the bankruptcy court's denial of a motion to dismiss—

which Defendants did not address or otherwise cite—which the district court *denied*,

observing that "it is properly within the province of the bankruptcy court to fully

consider and decide the matter upon a suitably developed record, prior to appellate

review." *In re Enron Corp.*, 2008 WL 281972, at *5 (S.D.N.Y. Jan. 25, 2008).  That

is exactly the approach that the Bankruptcy Court took here, and these Motions

should be denied for the same reason.

Indeed, it is well settled that "the desire to have a full record before

considering the disputed legal issue" is a proper basis for denying leave for

interlocutory appeal.  *In re THG Holdings LLC*, 2020 WL 1493622, at *6 (D. Del.

Mar. 27, 2020) (quoting *Katz*, 496 F.2d at 754); *see In re Dwek*, 2011 WL 487582,

at *5 (D.N.J. Feb. 4, 2011) (where bankruptcy court determines that "material factual

---

[6]     The *Enron* decision cited in the Motion not only is of little value in assessing an interlocutory appeal at the motion to dismiss stage, but also presented an entirely different issue than the one in this case.  *See In re Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *6.  The district judge's decision noted that the bankruptcy judge did not "merely identify[] a disputed issue of fact" regarding an agency relationship, but instead "principally reject[ed] [defendants'] contention . . . that they are entitled to the benefit of the safe harbor as a matter of law and without regard to extrinsic factual inquiries." *Id*.  Here, the Bankruptcy Court did explicitly identify a disputed issue of fact, stating that the application of the safe harbor "requires fact-intensive determinations" specifically on the question of "whether an agency relationship existed."  Opinion at 22-23.

disputes preclude[] judgment" on dispositive motion "such determination is not reviewable on interlocutory appeal").

Moreover, as the Bankruptcy Court observed, neither the pleadings nor the agreements purportedly incorporated therein demonstrate that the transfers at issue were effectuated in accordance with the process described in those agreements. Opinion at 24; *see In re Live Well Fin., Inc.*, 2023 WL 3995900, at *14 (Bankr. D. Del. June 13, 2023) (safe harbor not applicable where "there [wa]s no evidence that Live Well actually made payments in accordance with the Stock Purchase Agreement"). Even Defendants' own authorities instruct that "§ 101(22)(A) must be interpreted using a 'transfer-by-transfer' approach." *See In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 145 (2d Cir. 2023) (noting that contrary rule would be "absurd"). Here, the Bankruptcy Court concluded that it did not have sufficient information to do so.

Defendants also argue that the purported legal question presented "has substantial precedential import," pointing to the potential risk of forum shopping based on a claimed conflict with the Second Circuit. Motion at 10-11. As discussed *infra*, Defendants misstate both the scope and the substance of this supposed conflict. More importantly, even the most important legal issues are not ripe for appeal where the lower court discusses them only in dicta. *See, e.g.*, *Nickert* v. *Puget Sound Tug & Barge Co.*, 480 F.2d 1039, 1041 (9th Cir. 1973) ("An announcement by a trial

-10-

court of its then opinion on an abstract question of law prior to the taking of final, definitive action affecting the substantial rights of the parties is not an 'order' under 28 U.S.C. § 1292(b) which will support an interlocutory appeal.").

## II.    There Is No Substantial Ground for Difference of Opinion as to the Bankruptcy Court's Section 546(e) Ruling.

To satisfy the standard for interlocutory appeal, the "controlling question of law" must also be one as to which there is "substantial ground for difference of opinion."  28 U.S.C. § 1292(b); *In re Essar Steel Minn. LLC*, 607 B.R. at 416.  The difference of opinion "must arise out of genuine doubt as to the correct legal standard," including "conflicting and contradictory opinions," the "absence of controlling law," or the "court's decision [being] contrary to well-established law." *In re Essar Steel Minn. LLC*, 607 B.R. at 416 (internal citations and quotations omitted).

Defendants argue that the Bankruptcy Court's Opinion is "irreconcilable with Second Circuit precedent because the Second Circuit's opinions involve pleadings materially indistinguishable from those alleged here."  Motion at 13.  This argument is misguided for at least three reasons.

*First*, as noted above, the Bankruptcy Court's statement regarding Section 546(e)—which was premised on the lack of "clearly established" facts on the face of the complaints and the "limited record" available—did not involve

-11-

anything more than a deferral of consideration as to whether and to what extent Section 546(e) applies here.

*Second*, any substantial ground for difference of opinion justifying interlocutory appeal must relate to a question of law, and the issue here—whether or not an agency relationship exists—is a question of fact. *See Lang* v. *Morant*, 867 A.2d 182, 186 (Del. 2005) (agency relationship "depends on the presence of factual elements" and is "usually reserved to the factfinder"). The Bankruptcy Court correctly disregarded Defendants' invitation to speculate at the pleading stage about the role of Western Alliance Bank.

*Third*, even if the Bankruptcy Court had reached this question of fact, it would not have been appropriate to dismiss the complaints on the basis of Section 546(e). Defendants argue—in conclusory fashion, without ever analyzing the relevant language from the Escrow Agreement or Paying Agent Agreement—that that the holdings from the Second Circuit should apply here (and create a difference of opinion) because those opinions "involve pleadings materially indistinguishable from those alleged here." Motion at 13. Not so. *In re Tribune* and its progeny are readily distinguishable from the instant case.

The *In re Tribune* court defined an agency relationship for purposes of Section 546(e) by reference to a "fiduciary relationship." 946 F.3d 66, 79 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 2552 (2021) (citing Restatement (Third) of Agency

§1.01 (2006)).  Yet the relevant contracts in this case, the Escrow Agreement and the Payment Agent Agreement, in language that Defendants conveniently omit from their Motions, expressly disclaim that Western Alliance Bank entered into such a relationship with either WRS or Defendants.  *See* Decl. in Support of Mot. to Dismiss, Ex. 4 at 4, Adv. D.I. 101-4 (the "Escrow Agreement") ("Escrow Agent shall be obligated only to perform the duties specifically set forth in this Agreement . . . and ***shall under no circumstances be deemed to be a fiduciary*** to Any Party or any other person." (emphasis added)); Reply Decl. in Support of Mot. to Dismiss, Ex. 5 at 7, Adv. D.I. 179-1 (the "Paying Agent Agreement") ("Paying Agent undertakes to perform the duties set forth herein, ***each of which is ministerial and non-fiduciary in nature***, and no implied duties or obligations shall be read into this Agreement." (emphasis added)).

Similarly, the *In re Nine West* court held that Section 546(e) is inapplicable where the purported agent's role in the covered transaction is "purely ministerial."  87 F.4th at 148-49 (reasoning that it "would not further Congress's purpose" in enacting the safe harbor to "immunize transactions in which a bank took only purely ministerial action").  Although their Motions again omit to mention it, Defendants do not—and cannot—dispute that the relevant contracts here explicitly provided that Western Alliance Bank's role was "purely ministerial."  *See* Escrow Agreement at 4 ("Escrow Agent shall be obligated only to perform the duties

-13-

specifically set forth in this Agreement, which shall be deemed ***purely ministerial in nature***." (emphasis added)); Paying Agent Agreement at 7 ("Paying Agent undertakes to perform the duties set forth herein, ***each of which is ministerial . . . in nature***." (emphasis added)).[7]  As such, even if *In re Tribune* and *In re Nine West* were binding authority here, there would be good grounds under those decisions to deny Defendants' motions to dismiss or at a minimum to hold, as the Bankruptcy Court below did, that factual issues preclude dismissal based on the pleadings.

## III.  Defendants' Requested Appeal Would Not Materially Advance the Litigation.

Defendants erroneously state that their interlocutory appeal, if granted, would resolve all claims against the Defendants that are former Embed equity holders. *See* Motion at 16.  That is incorrect for at least two reasons. *First*, even if this Court were to permit interlocutory appeal and then decide the purported circuit split issue regarding the scope of Section 546(e) in Defendants' favor, the applicability of that safe harbor still requires an assessment of the facts, which remain to be developed. *Second*, Plaintiffs are imminently filing in the Bankruptcy Court motions to amend the complaints in the underlying adversary proceedings.  If

---

[7]     In the same vein, the agreements underlying the decision in *In re Boston Generating* are materially different from, and do not contain the above language in, the agreements at issue here. *See In re Boston Generating*, 12-ap-01879 (Bankr. S.D.N.Y. Apr. 3, 2019), ECF No. 272-1 at 163-414, 290-1 (failing to reference "ministerial" functions or "non-fiduciary" relationships).

the Bankruptcy Court grants those motions, there will be new operative complaints that will (a) revive Plaintiffs' actual fraudulent transfer claims, which are not subject to the Section 546(e) safe harbor, and (b) supersede the initial complaints that were the subject of the motions to dismiss and the Bankruptcy Court's ruling on those motions, and thereby moot Defendants' instant Motions in this Court. *See* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 & n.1 (3d ed. 2005) (amended pleading "supersedes the pleading it modifies" and "becomes the operative complaint," and "the original pleading no longer performs any function in the case").

Additionally, and as Defendants admit,[8] Plaintiffs' constructive fraudulent transfer claim as to the $55 million retention payment to Defendant Michael Giles would persist regardless of the Court's ruling on any interlocutory appeal. That payment is not part of a "covered transaction" because it was not a "settlement payment" made in connection with a securities contract, nor does it fall under any other applicable covered transaction, *see* 11 U.S.C. § 546(e), and Defendants have never argued otherwise. As a result, an interlocutory appeal on the

---

[8]    Joinder Motions at 2 n.3 ("[T]hese arguments concern transfers that relate to the consideration paid in connection with the Embed acquisition, and not retention payments alleged to have been made to certain Defendants.").

Section 546(e) issue would have no effect on the constructive fraudulent transfer claim against Giles.

## IV.    There Are No Exceptional Circumstances To Justify Interlocutory Review.

Finally, Defendants fail to provide any "exceptional circumstances" that would warrant interlocutory appeal. *In re Del. & Hudson Ry. Co.*, 96 B.R. at 472-73. Defendants merely cite to the purported circuit split and contend that they are being "deprive[d] . . . of their statutory right to benefit from the safe harbor's protections before being subjected to the burdens of discovery and full-fledged litigation." Motion at 1. But it is black letter law that discovery costs and the "prolonging of a final resolution" do not qualify as "exceptional circumstances." *In re Enron Corp.*, 2008 WL 281972, at *5.

Nor is any purported split with the Second and Eighth Circuits or desire for consistent treatment of Section 546(e) across jurisdictions reason enough to warrant interlocutory review. "The extraordinary relief of interlocutory review is not necessary to address the split Defendants identify, as the case law can be harmonized, if necessary, in the ordinary course of appellate review." *In re Paragon Offshore PLC*, 2020 WL 1815550, at *5 (D. Del. Apr. 9, 2020).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions for Leave To Appeal.

Dated: November 20, 2024
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Kimberly A. Brown (No. 5138)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
E-mail: landis@lrclaw.com
        mcguire@lrclaw.com
        brown@lrclaw.com
        pierce@lrclaw.com
*Counsel for Plaintiffs*
-and-
**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich (*pro hac vice* forthcoming)
Brian D. Glueckstein (*pro hac vice* forthcoming)
Justin J. DeCamp (*pro hac vice* forthcoming)
Christopher J. Dunne (*pro hac vice* forthcoming)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        gluecksteinb@sullcrom.com
        decampj@sullcrom.com
        dunnec@sullcrom.com
*Counsel for Plaintiffs in Adv. Pro. No. 23-50380*

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Sascha N. Rand (*pro hac vice* forthcoming)
Isaac Nesser (*pro hac vice* forthcoming)
51 Madison Ave, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
E-mail: sascharand@quinnemanuel.com
        isaacnesser@quinnemanuel.com

William Burck (*pro hac vice* forthcoming)
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
E-mail:
williamburck@quinnemanuel.com

*Counsel for Plaintiffs in Adv. Pro. No. 23-50379*

-18-

## <u>CERTIFICATION OF COMPLIANCE</u>

The foregoing brief complies with Rule 8103(f) of the Federal Rules of Bankruptcy Procedure and this Court's Standing Order Regarding Briefing in All Cases because it contains 3,807 words and was prepared in 14-point Times New Roman font.

Dated: November 20, 2024          <u>*/s/ Matthew B. McGuire*</u>
                                  Matthew B. McGuire